**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **THE STEPHENS COMPANY** | § | **CASE NO.  06-30674-H5-11** |
| | § | **(Chapter 11)** |
| **Debtor** | § | |

---

# DEBTOR'S CHAPTER 11
# PLAN OF REORGANIZATION

---

Dated: June 13, 2006
Houston, Texas

Randall A. Rios
Lynn Chuang Kramer
**MUNSCH HARDT KOPF & HARR, P.C.**
700 Louisiana, Suite 4600
Houston, Texas 77002-2732
Telephone: (713) 222-1470
Facsimile: (713) 222-1475

**ATTORNEYS FOR THE DEBTOR**

The Stephens Company (the "Debtor"), as debtor-in-possession in the above-referenced Chapter 11 case, proposes the following Plan of Reorganization for the Debtor under Chapter 11 of the Bankruptcy Code.

## ARTICLE 1
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

1.1   Definitions.

The capitalized terms used herein shall have the respective meanings set forth below:

a.   "Administrative Expense" means any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under Section 507(a)(2) and allowed under Section 503(b) of the Bankruptcy Code, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code.

b.   "Allowed" when used with respect to any Claim, except for a Claim that is an Administrative Expense, means (i) such Claim to the extent it is not a Contested Claim; (ii) such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (iii) a Contested Claim, proof of which was filed timely with the Bankruptcy Court and (a) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (b) as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

c.   "Avoidance Actions" means any and all rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code.

d.   "Ballot" means the Ballot to be used by creditors to cast their votes to accept or reject the Plan.

e.   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

f.   "Bankruptcy Court" means the Bankruptcy Court unit of the United States District Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over the Chapter 11 case.

g.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

h.   "Bar Date" means the final date for the filing of proofs of Claims set by the Bankruptcy Court or such other date as may apply to a particular Claim pursuant to a duly entered order of the Bankruptcy Court.

i.   "Building" means the warehouse and office facility owned by the Debtor located at 6415 Allegheny St., Houston, Texas.

j.      "Business Day" means any day on which commercial banks are open for business in Houston, Texas.

k.      "Case" means the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date.

l.      "Cash" means legal tender of the United States of America or Cash equivalents.

m.      "Claim" shall have the meaning set out in section 101 of the Bankruptcy Code.

n.      "Claimant" or "Creditor" means the holder of a Claim.

o.      "Collateral" means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

p.      "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

q.      "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code, as it may be continued from time to time, on confirmation of the Plan.

r.      "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

s.      "Contested" when used with respect to a Claim, means a Claim against the Debtor (i) that is listed in the Debtor's Schedules as disputed, contingent or unliquidated regardless of whether a proof of claim has been filed or not; (ii) that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (iii) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed.  Notwithstanding the foregoing, after the Objection Deadline, including any extensions thereto, only Claims to which an Objection has been filed shall be deemed Contested Claims with respect to claims for which a proof of claim has been filed.

t.      "Court" means the Bankruptcy Court.

u.      "Debtor" means The Stephens Company, a Texas corporation.

v.      "Disallowed," when used with respect to a Claim, means a Claim that has been disallowed by Final Order.

w.      "Distributable Assets" means the assets available for distribution to Administrative Expense Claimants, Priority Tax Claimants, claimants in Classes 1 through 5 and Class 6 Equity Interest holders under the Plan.  The Distributable Assets shall consist of the Building, if it has not already been sold before the Confirmation

Hearing, all cash held by the Debtor and all rights and causes of action against third parties for obligations existing as of the Effective Date.

x.      "Distribution Trustee" means the person approved by the Court to serve as trustee of the Trust, as provided in Article 6.1 of the Plan.

y.      "Effective Date" means a Business Day selected by the Debtor following the first Business Day after the day on which the Confirmation Order becomes a Final Order.

z.      "Equity Interest" means the interest represented by an "equity security," as defined in Section 101 of the Bankruptcy Code.

aa.      "Estate" means the bankruptcy estate of the Debtor.

bb.      "Fee Application" means an application of a Professional Person under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

cc.      "Fee Claim" means a Claim under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

dd.      "Final Order" means an order or judgment which has not been reversed, stayed or superseded, modified, or amended and as to which (a) any appeal, other review or stay that has been filed has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

ee.      "General Unsecured Claim" means any Claim against a Debtor that is not a Priority Claim, Secured Claim or an Administrative Expense.

ff.      "Leases" means all unexpired "leases" and "executory contracts" as such terms are used within Section 365 of the Bankruptcy Code to which the Debtor was a party as of the Petition Date.

gg.      "Litigation Claims" means all claims or causes of action held by the Debtor including any Avoidance actions.

hh.      "Stephens Distribution Trust Agreement" means the agreement in substantially the form of Exhibit A attached hereto.

ii.      "Objection Deadline" means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Article 9.1 of the Plan.

jj.      "Petition Date" means February 21, 2006.

kk.      "Plan" or "Plan of Reorganization" means this Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

ll.     "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein (including the Stephens Distribution Trust Agreement), which will be substantially in the form filed by the Debtor with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

mm.     "Priority Claim" means any Claim (other than an Administrative Expense) to the extent entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

nn.     "Priority Non-Tax Claim" means any Priority Claim accorded priority in right of payment under Section 507(a)(4), (5), (6), (7) or (9) of the Bankruptcy Code.

oo.     "Priority Tax Claim" means a Priority Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

pp.     "Professional Person" means a person retained or to be compensated pursuant to Section 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code.

qq.     "Pro Rata Share" means the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Contested Claims, but not including Disallowed Claims.

rr.     "Representatives" means any officer, director, financial advisor, attorney, law firm, accounting firm, financial advising firm, and other Professional Person.

ss.     "Schedules" means the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

tt.     "Secured Claim" means a Claim secured by a lien on property of a Debtor, which lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 cases, but only to the extent of the value of the Collateral that secures payment of such Claim.

uu.     "Subordinated Claim" means a Claim which has been subordinated to payment of all General Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code.

vv.     "Tax Liens" means any statutory liens securing any Allowed Secured Claims of any ad valorem taxing authority.

ww.     "Trust" means the Stephens Distribution Trust created pursuant to Article 6.1 of the Plan.

xx.     "Vesting Date" means the five (5) business days following the Effective Date upon which the Distributable Assets shall vest in the Trust pursuant to Article 6 of the Plan.

yy.     "Withheld Distribution Amount" means an amount withheld by the Distribution Trustee sufficient to be distributed on account of the full amount of any

Contested Claim, provided, however, the Distribution Trustee may request that the Bankruptcy Court estimate the amount to be placed in escrow on account of any Contested Claim and such estimated amount need not be the full amount of the asserted Claim.

1.2     Interpretation.

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time.  The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

1.3     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

1.4     Other Terms.

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

1.5     Integration Clause.

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

1.6     Plan Documents.

The Plan Documents are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1     Claims and Equity Interests Classified.

For purposes of organization, voting and all confirmation matters, all Claims (except for Administrative Expenses and Priority Tax Claims) and all Equity Interests shall be classified as set forth in this Article 2 of the Plan.  This Plan shall only provide distributions to Allowed Claims; nothing within this Plan shall provide for the Allowance of any Claim.

2.2   Administrative Expenses and Priority Tax Claims.

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article 5 of the Plan.

2.3   Claims and Equity Interests.

The Plan classifies the Claims against and Equity Interests in the Debtor as follows:

| | | |
|---|---|---|
| 2.3.1 | Class 1: | Allowed Priority Non-Tax Claims. |
| 2.3.2 | Class 2: | Allowed Secured Claims. |
| 2.3.3 | Class 3: | Allowed General Unsecured Claims. |
| 2.3.4 | Class 4: | Allowed Unsecured ESOP Claims. |
| 2.3.5 | Class 5: | Allowed Subordinated Claims. |
| 2.3.6 | Class 6: | Equity Interests. |

**ARTICLE 3**
**IDENTIFICATION OF IMPAIRED CLASSES; ACCEPTANCE OR**
**REJECTION OF THE PLAN; EFFECT OF REJECTION BY**
**ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS**

3.1   Impaired Classes of Claims and Equity Interests.

Claims in Classes 2 (Secured Claims), 3 (General Unsecured Claims), 4 (Unsecured ESOP Claims) and 5 (Subordinated Claims) are impaired under the Plan. Claims in Classes 1 and 6 are unimpaired.

3.2   Impairment Controversies.

If a controversy arises as to whether any Claim or Equity Interest or any class of Claims or class of Equity Interests is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

3.3   Classes Entitled to Vote.

Claimants, if any, in Classes 1 and 6, which are unimpaired, are conclusively deemed to accept the Plan and cannot vote. Classes 2, 3, 4 and 5 may vote to accept or reject the Plan.

3.4   Class Acceptance Requirement.

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the holders of Allowed Claims in such class that have voted on the Plan.

3.5    Cramdown.

If any class of Claims or Equity Interests shall fail to accept the Plan in accordance with Section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.  The Debtor will seek confirmation of the Plan pursuant to section 1129(b) with respect to any non-accepting class.

3.6    Disallowance of Claims Subject To Avoidance Actions.

Any otherwise Allowed Claim which is subject to Avoidance Actions as described in the Disclosure Statement under Section 547 of the Bankruptcy Code shall be disallowed pursuant to Section 502(d) of the Bankruptcy Code until such time as the avoidable transfers are returned to the estate or the Trustee and such holder of a claim subject to an avoidable preference shall not be entitled to vote to accept or reject this Plan.

**ARTICLE 4**
**PROVISIONS FOR TREATMENT OF CLAIMS AND**
**EQUITY INTERESTS UNDER THE PLAN**

The classes of Claims against and Equity Interests in the Debtor shall be treated under the Plan as follows:

4.1    Class 1 – Allowed Priority Non-Tax Claims.

Each holder of an Allowed Priority Non-Tax Claim against a Debtor shall receive on account of its Allowed Priority Non-Tax Claim the amount of such holder's Allowed Priority Non-Tax Claim.  Distributions shall commence as soon as sufficient available funds, to be determined by the Distribution Trustee in the exercise of the Distribution Trustee's sole discretion, are available to make such distribution economically feasible.  Provided, however, to the extent such claim has been assumed by a third party, the holder of such claim shall look solely to such third party for payment and shall receive nothing from the Debtor or the Reorganized Debtor.

4.2    Class 2 – Allowed Secured Claims.

Each Allowed Secured Claim shall be paid in full, together with accrued interest and Allowed fees and costs of collection, from the proceeds of the Collateral securing each of the Allowed Secured Claims.  Such payment shall be made, provided the Claim has been Allowed as a Class 2 Claim, at closing of the sale of the Collateral or, if Allowed at a later date, at the time the Claim is Allowed.  The enforcement of any rights of a Class 2 Claimant against the respective collateral securing such Claim shall be barred by a post-confirmation injunction, subject to further Order of the Court.  Any portion of a claim held by a potential Class 2 Claimant with respect to which the lien is determined by the Court to either be invalid or which Claim exceeds the value of the underlying collateral shall be treated, to the extent otherwise allowable, as a Class 3 Claim.

4.3    Class 3 – Allowed General Unsecured Claims.

Allowed Claims in Class 3 shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided.  Each Holder of an Allowed General Unsecured Claim will receive its Pro Rata Share in periodic distributions from the Distribution Trustee (following

payment in full of Administrative Claims, Priority Tax Claims, and Claims in Classes 1 and 2) concurrent with and in proportion to distributions made to holders of a Class 4 Allowed Unsecured ESOP Claim. Distributions shall commence as soon as sufficient available funds, to be determined by the Distribution Trustee in the exercise of the Distribution Trustee's sole discretion, are available to make such distribution economically feasible.

4.4    Class 4 – Allowed Unsecured ESOP Claims.

Allowed Claims in Class 4 shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided. Each Holder of an Allowed Unsecured ESOP Claim will receive its Pro Rata Share in periodic distributions from the Distribution Trustee (following payment in full of Administrative Claims, Priority Tax Claims, and Claims in Classes 1 and 2) concurrent with and in proportion to distributions made to holders of a Class 3 Allowed General Unsecured Claim. Distributions shall commence as soon as sufficient available funds, to be determined by the Distribution Trustee in the exercise of the Distribution Trustee's sole discretion, are available to make such distribution economically feasible.

4.5    Class 5 – Allowed Subordinated Claims.

Allowed Claims in Class 5 shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided. Each Holder of an Allowed Subordinated Claim will receive its Pro Rata Share in periodic distributions from the Distribution Trustee (following payment in full of Administrative Claims, Priority Tax Claims, and Claims in Classes 1 through 4). Distributions shall commence as soon as sufficient available funds, to be determined by the Distribution Trustee in the exercise of the Distribution Trustee's sole discretion, are available to make such distribution economically feasible.

4.6    Class 6 – Equity Interests.

The holders of Equity Interests shall retain their Interests in the Debtor, but shall receive no distribution from the estate unless all holders of claims for Administrative Expenses, Priority Tax Claims, and Claims in Classes 1 through 5 have been paid in full. If the funds in the Estate are sufficient to provide for payment in full of all Claims in the Case, the holders of the Equity Interests shall retain the rights to any excess proceeds.

**ARTICLE 5**
**PROVISIONS FOR TREATMENT OF**
**UNCLASSIFIED CLAIMS UNDER THE PLAN**

All Administrative Expenses and Priority Tax Claims against the Debtor shall be treated as follows:

5.1    Treatment of Allowed Administrative Expenses.

Each holder of an Allowed Administrative Expense against the Debtor shall receive cash from the Debtor and/or the Distribution Trustee on the later of the Effective Date or, if thereafter Allowed, on the date the Allowed Administrative Expenses becomes a Final Order (a) in the amount of such holder's Allowed Claim in one Cash payment or (b) such other treatment as may be agreed upon in writing by the Debtor or Distribution Trustee and such holder; provided, however, that the Allowed fee claim of all Professional Persons shall be paid first from any pre-petition retainer, with the balance to be paid by the Debtor prior to the Vesting Date and by the

Distribution Trustee after the Vesting Date.  However, to the extent the liability for such claim or the related contract has been assumed by a third party, the holder of such claim for Administrative Expense shall look solely to that third party for payment and shall receive nothing from the Debtor or the Trust.

5.2     Time for Filing Administrative Expenses.

        **THE HOLDER OF AN ADMINISTRATIVE EXPENSE, OTHER THAN A FEE CLAIM OR A CLAIM FOR AD VALOREM PROPERTY TAXES, MUST FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE DEBTOR AND ITS COUNSEL NOTICE OF SUCH ADMINISTRATIVE EXPENSE PRIOR TO THE COMMENCEMENT OF THE CONFIRMATION HEARING.**  Such notice must include at a minimum: (a) the name of the holder of the Claim; (b) the amount of the Claim; and (c) the basis of the Claim.  Failure to file and serve this notice timely and properly shall result in the Administrative Expense being forever barred and discharged.

5.3     Time for Filing Fee Claims.

        Each Professional Person or other entity that holds or asserts an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within such time as the Court may order.

5.4     Allowance of Administrative Expenses.

        An Administrative Expense Claim, whether asserted by notice or has been filed pursuant to Article 5.2 of the Plan or under a Fee Application with respect to a Fee Claim, shall become an Allowed Administrative Expense only to the extent Allowed by Final Order.

5.5     Treatment of Priority Tax Claims.

        Each holder of an Allowed Priority Tax Claim against the Debtor shall receive in full satisfaction of such holder's Allowed Priority Tax Claim Cash either at closing or from the Distribution Trustee in the full amount of such Allowed Priority Tax Claim.  Pending such payment, the holders of such claims shall retain the Tax Liens securing the claims.  However, to the extent the property related such claim has been transferred to, or such claim has been assumed by another party, the holder of such claim shall look solely to that party for payment and shall receive nothing from the Debtor or the Trust.

**ARTICLE 6**
**THE STEPHENS DISTRIBUTION TRUST**

6.1     Creation of Trust.

        On the Effective Date, a trust is hereby created for the purpose of receiving and distributing the Distributable Assets and satisfying Claims and shall be subject to the provisions of the Stephens Distribution Trust Agreement as approved by the Court in substantially the form and substance as that filed or to be filed as a Plan Document.  The Trust will not engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Trust.  On the Vesting Date, the person appointed pursuant to the Confirmation Order shall assume the duties as Distribution Trustee and shall receive any and all

assets coming into or becoming a part of the Trust and disburse the proceeds from revenues realized from the operation, lease, assignment, sale or other similar transaction involving the property constituting the Trust consistent with the terms of this Plan and the Distribution Trust Agreement.  The beneficiaries of the Trust will be treated as the grantors and deemed owners of the Trust. The Distribution Trustee must file federal income tax returns for the Trust as a grantor trust pursuant to Section 1.671-4(a) of the Federal Income Tax Regulations.

The transfers to the Trust must be treated for all purposes of the Internal Revenue Code as a deemed transfer of assets to Creditors receiving interests in the Trust followed by a deemed transfer to such Creditors to the Trust.

6.2    Funding of Res of Trust.

To fund the Trust, by operation of the Confirmation Order, the Distribution Trustee shall be in possession of and have title to the Distributable Assets on the Vesting Date.   The conveyances of all Distributable Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective on the Vesting Date, without the need of further documentation or instruments of conveyance, other than the Plan and the Confirmation Order.  Upon the Vesting Date, the Trust shall also be deemed to have taken an assignment of all rights or causes of action constituting Distributable Assets in which the Debtor may own an interest against third parties for obligations existing on the Effective Date, unless expressly released herein or by separate order of the Bankruptcy Court.   Any litigation commenced after the Vesting Date in which the Debtor is the plaintiff shall be commenced in the name of the Distribution Trustee as successor to the rights of the Debtor.  The Distribution Trustee may present such orders as may be necessary to require third parties to accept and acknowledge such conveyance to the Trust.  Such orders may be presented without further notice other than as has been given in this Plan.  The beneficiaries of the Trust shall be the holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Claims and Equity Interests in Classes 1 through 6.

6.3    Additional Funds Placed in Trust.

In addition to the Distributable Assets, any funds reserved for payment of any estimated Administrative Expenses, Priority Claims or Class 2 Claims shall be placed in the Trust on the Vesting Date and thereafter paid by the Trust at the time such Claims become Allowed Claims.

6.4    Discharge of the Debtor; Responsibilities for Further Administration.

On the Vesting Date, the Debtor will be deemed discharged from further responsibilities with respect to administration of the Estate.   Thereafter, the Distribution Trustee shall be responsible for all administrative activities with respect to the Reorganized Debtor, including, without limitation, the prosecution of any and all rights, claims or causes of action, including, but not limited to, the Litigation Claims, the review and contest, if applicable, of Claim allowance and the filing of tax returns on behalf of the Trust.

6.5    Name of Trust.

The Trust shall be known as "The Stephens Distribution Trust."

6.6     Terms of the Trust.

The Trust shall be governed by the terms of The Stephens Distribution Trust Agreement, which shall be filed and approved by the Court as a Plan Document, and which shall contain customary provisions for the powers and indemnification of the Distribution Trustee.

6.7     Termination of the Trust.

The Distribution Trustee shall make a final distribution of the Trust, and the Trust shall terminate, not later than 120 days after the last to occur of: (a) the liquidation of all assets of the Trust, including the resolution by judgment or settlement of all claims or causes of action held or asserted by the Trust, and the collection by the Distribution Trustee of all such judgments or settlements, or the determination by the Distribution Trustee, after notice to all creditors (and approval by the Bankruptcy Court in the event any objection thereto is filed), that any such assets, claims, judgments, or settlements ought to be abandoned or written off as uncollectible or of negligible value; and (b) the final resolution of all objections to Claims, so that all Claims asserted against the Debtor have become either finally allowed or finally disallowed. Notwithstanding, the Trust shall terminate on the fifth anniversary of the Effective Date unless the Trustee (with Bankruptcy Court approval obtained within six months of the beginning of such extended period) determines that the extension of the Trust term for a specified finite term is necessary.  Upon termination of the Trust, the Trustee shall have no further obligations to the Trust Beneficiaries or holders of Allowed Claims.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     Vesting of Assets.

Pursuant to The Stephens Distribution Trust Agreement, the Distribution Trustee shall be appointed the representative of the Estate for purposes of prosecuting any and all rights, claims, or causes of action, including, but not limited to, the Litigation Claims, whether known or unknown, asserted or unasserted, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law.  The Distribution Trustee may prosecute, settle or dismiss rights, claims, or causes of action as the Distribution Trustee sees fit and all proceeds therefrom shall be the property of the Trust, except as expressly released within this Plan.  The Debtor, the Distribution Trustee and their respective Representatives shall have no liability for pursuing or not pursuing any such rights, claims, or causes of action vested in the Trust pursuant to this Plan.

7.2     Management Authority Under the Plan.

All actions and transactions contemplated under the Plan, including, but not limited to, any documents to be executed to effectuate the Plan, shall be authorized upon confirmation of the Plan without the need of further board or manager approval, notice or meetings, other than the notice provided by serving this Plan on all known creditors of the Debtor, all Interest Holders, and all current managers, general partners and limited partners of the Debtor.  The Confirmation Order shall include provisions dispensing with the need for further board or manager approval, notice or meetings and authorizing and directing the Debtor to execute such documents necessary to effectuate the Plan, which documents shall be binding on the Debtor, the Debtor's creditors and all of the holders of Interests.  Upon the Vesting Date, the existing

management of the Debtor shall have no further duties or responsibilities with respect to the Debtor or the Trust, except to the extent employed by the Trust after the Effective Date.

7.3   <u>Tax Reporting Responsibility.</u>

The Distribution Trustee shall be responsible for filing all tax returns of the Debtor and the Trust for operations and activities occurring on and after the Vesting Date.

7.4   <u>Distribution Trustee to Liquidate or Abandon All Assets and Distribute Proceeds.</u>

The Distribution Trustee shall sell, transfer, assign, convey, lease, use, and otherwise liquidate all unsold assets of the Trust to pay Allowed Claims as designated within this Plan. Following the Effective Date, the Distribution Trustee may, if he or she deems any asset to be of inconsequential value or burdensome to the Trust, may abandon any such asset in his or her discretion.  The proceeds of liquidation shall be distributed as provided in this Plan.

7.5   <u>Closing of Case.</u>

As soon as the Trust has performed all its obligations under the Plan the Distribution Trustee shall seek the entry of an Order of the Court closing the case.  The Order closing the case shall also discharge the Distribution Trustee and the Advisory Committee from further duties and obligations under the Plan.

**ARTICLE 8**
**PROVISIONS GOVERNING DISTRIBUTIONS**

8.1   <u>Order of Distribution of Trust Cash.</u>

The Distribution Trustee shall distribute or reserve available cash of the Trust in the following order of priority to pay:

a.     Allowed Secured Claims of Class 2 (such Claims to be paid only from the proceeds of such other Collateral securing their respective Allowed Secured Claims);

b.     Allowed Administrative Expense Claims of this Chapter 11 case;

c.     Post-confirmation expenses of the Trust, including a reserve of such cash to pay future expenses of the Trust as the Distribution Trustee deems advisable;

d.     Allowed Claims of Class 1 in order of priority with Bankruptcy Code section 507(a)(4), Allowed Claims being satisfied in full first, Bankruptcy Code section 507(a)(5) being satisfied in full next, and then Bankruptcy Code section 507(a)(6), and so on;

e.     Allowed Claims entitled to priority pursuant to Bankruptcy Code section 507(a)(8);

f.     Allowed Claims of Class 3 and 4;

g.     Allowed Claims in Class 5; and

h.     Allowed Equity Interests.

Provided, however, with respect to each of the categories in (d) through (g) above, to the extent such claim has been assumed by a third party the holder of such Claim shall look solely to the that third party for payment and shall receive nothing from the Debtor, the estate, or the Trust.

8.2    Distributions To Be Pro Rata Within Class.

All distributions constituting of a partial payment to a class of Allowed Claims shall be made on a Pro Rata Share to the holders of Allowed Claims in such class.

8.3    Federal Tax Identification Number.

The Distribution Trustee may suspend distribution to any Creditor that has not provided the Distribution Trustee with its Federal Tax Identification number or social security number, as the case may be.

8.4    Means of Cash Payment.

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Debtor's or Distribution Trustee's option, as the case may be, by wire transfer from a domestic bank, except that payments made to foreign creditors holding Allowed Claims may be in such funds and by such means as are customary or as may be necessary in a particular foreign jurisdiction.

8.5    Delivery of Distributions.

Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders (or at the last known addresses of such a holder if no proof of Claim or proof of Equity Interest is filed or if the Distribution Trustee has been notified in writing of a change of address), except as provided below.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Distribution Trustee is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts in respect of undeliverable distributions shall be returned to the Distribution Trustee until such distributions are claimed. **ALL CLAIMS FOR UNDELIVERABLE DISTRIBUTIONS SHALL BE MADE ON OR BEFORE THE SECOND ANNIVERSARY OF THE EFFECTIVE DATE.**  After such date, all unclaimed property shall revert to Classes 1 through 5 in the order of distribution as provided herein until such time that Classes 1 through 5 have been paid in full, and in such instance the funds will revert to Class 6 Equity Holders, and the claim of any holder with respect to such property shall be discharged and forever barred.

8.6    Time Bar to Cash Payments.

Checks issued by the Distribution Trustee in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Distribution Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  **ANY CLAIM IN RESPECT OF SUCH A VOIDED CHECK SHALL BE MADE ON OR BEFORE THE LATER OF (A) THE FIRST ANNIVERSARY OF THE EFFECTIVE DATE OR (B) NINETY (90) DAYS AFTER THE DATE OF REISSUANCE OF SUCH CHECK.  AFTER SUCH DATE, ALL**

**CLAIMS IN RESPECT OF VOID CHECKS SHALL BE DISCHARGED AND FOREVER BARRED.**

8.7     No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to (a) any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim, (b) Claimants who are defendants in Avoidance Actions and other parties subject to the application of Section 502(d) of the Bankruptcy Code, and (c) reclamation claims pursuant to Section 546(c)(2)(A) of the Bankruptcy Code which are not Allowed Claims.

8.8     Withholding of Distribution on Account of Contested Claims.

Except as limited herein, the Distribution Trustee shall withhold from any distribution an amount sufficient to be distributed on account of the full amount of Contested Claims (the "Withheld Distribution Amount"). To the extent requested by the Distribution Trustee the Bankruptcy Court may estimate the amount to be withheld on account of any Contested Claim, which amount need not be the full amount of the asserted Claim.

8.9     Distributions After Allowance.

Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.  With respect to any Claim that is a Contested Claim on the Effective Date, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Contested Claim becomes a Final Order the Debtor or, if following 30 days after the Effective Date or a shorter period if the Reorganized Debtor so decides, the Distribution Trustee shall distribute to the holders of such Claim from the Contested Claims Escrow any distribution that would have been distributed to such holder if the Claim had been Allowed on the Effective Date, without interest on such Claim or distribution, unless interest is required upon an Allowed Secured Claim pursuant to Bankruptcy Code section 506.

8.10    Distributions After Disallowance.

Any Withheld Distribution Amount in the Contested Claims Escrow after any and each objection to a Contested Claim has been resolved by Order of the Bankruptcy Court shall be distributed in accordance with the provisions of the Plan.  The Distribution Trustee in all things can and shall rely on an order of the Bankruptcy Court fixing the amount of a Claim or disallowing a Claim; the Distribution Trustee shall make no further reserve on account of a Claim that has been disallowed or reduced by the Bankruptcy Court, unless the effected claimant obtains a stay pending appeal that requires that the Distribution Trustee reserve on account of such Claim.  In no event shall the reversal or modification on appeal or reconsideration of a Bankruptcy Court order disallowing a Claim affect the validity or require the disgorgement of any distributions having already been made pursuant to the Plan, if such claimant did not obtain a stay pending reconsideration or appeal which required a further reserve.

8.11    Exculpation and Immunity Regarding Distributions.

The Debtor, the Distribution Trustee and their respective Representatives are hereby exculpated by all persons, holders of Claims and Equity Interests, entities and parties-in-interest receiving distributions under the Plan from any and all claims, causes of action and other assertions of liability arising out of the Debtor's and/or Distribution Trustee's discharge of the powers and duties conferred upon it by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or applicable law, except solely for actions or omissions arising out of willful misconduct.  No current holder of a Claim or an Equity Interest; and no representative thereof, shall have or pursue any claim or cause of action against the Debtor and/or the Distribution Trustee for making payments or taking any action in accordance with the Plan or for implementing the provisions of the Plan or against any holder of a Claim for receiving or retaining payments or other distributions as provided for by the Plan.

**ARTICLE 9
PROCEDURES FOR RESOLVING AND TREATING
CONTESTED AND DISPUTED CLAIMS UNDER THE PLAN**

9.1    Objection Deadline.

As soon as practicable, but in no event later than six months after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

9.2    Prosecution of Objections.

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to claims may be made by the Distribution Trustee.

**ARTICLE 10
PROVISIONS GOVERNING EXECUTORY CONTRACTS AND
UNEXPIRED LEASES UNDER THE PLAN**

10.1    Leases.

The Plan constitutes and incorporates a motion by the Debtor to reject, as of the Confirmation Date, all Leases which were not assumed or assumed and assigned prior to the Effective Date.  Provided, however, all insurance policies and indemnity agreements in which the Debtor or the Debtor's property are insured and/or indemnified against loss (whether for potential liability or for costs of defense) which were not assigned are hereby assumed and assigned to the Trust.

10.2    Deadline for Cure Claims

**UNLESS OTHERWISE PROVIDED BY ORDER OF THE COURT, ANY CURE CLAIM SHALL BE FILED ON OR BEFORE THE EARLIER OF THIRTY (30) DAYS THE EFFECTIVE DATE.**  Cure Claims which are not timely filed shall be forever barred and shall not be enforceable against the Debtor, the Trust or their respective properties or their agents, successors or assigns.

10.3    Bar to Rejection Damages.

If the rejection of a Lease by the terms hereof results in damages to the other party or parties to such Lease, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Distribution Trustee or their respective properties or their agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Distribution Trustee and counsel for the Distribution Trustee on or before thirty (30) days after the Effective Date.

## ARTICLE 11
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

11.1    Conditions Precedent to Effective Date of the Plan.

The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent:

a.    The Confirmation Order is not subject to a stay; and

b.    All other documents effectuating the Plan shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

11.2    Waiver of Conditions.

The Debtor may waive the conditions to the Effective Date, in whole or in part, at any time, without notice, an order of the Bankruptcy Court or any further action other than proceeding to consummation of the Plan.  The failure to satisfy or waive any condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.1    Scope of Jurisdiction.

Pursuant to Sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Chapter 11 case and the Plan pursuant to, and for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes to:

a.    hear and determine pending applications for the assumption or rejection of Leases and the allowance of Claims resulting therefrom;

b.    hear and determine any and all adversary proceedings, applications and contested matters, including any remands of appeals;

c.    ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

d.      hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation or payment of any Claim;

e.      enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

f.      enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the Plan and the transactions contemplated thereunder;

g.      consider any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

h.      hear and determine all Fee Applications and Fee Claims;

i.      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation or enforcement of the Plan;

j.      enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order;

k.      enter and implement orders or take such other actions as may be necessary or appropriate to recover all assets of the Debtor and property of the Estate, wherever located;

l.      hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

m.      hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

n.      enter a final decree closing the Chapter 11 case.

12.2    <u>Failure of the Bankruptcy Court to Exercise Jurisdiction.</u>

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Article 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE 13**
**MISCELLANEOUS PROVISIONS**

13.1    Post-Confirmation Injunction.

The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All holders of Claims shall be prohibited from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder filed a proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan.

13.2    Preservation of Setoff and Other Rights.

In the event that the Debtor has a claim of any nature whatsoever against the holder of a Claim, the Distribution Trustee may, but is not required to, setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Trust of any claim that the Trust has against the holder of a Claim.

Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Claimant herein; provided that the exercise of such right shall not be permitted unless the Claimant provides the Debtor, or after the Effective Date, the Distribution Trustee, with written notice of the intent to effect such setoff or recoupment.  If the Debtor or the Distribution Trustee, as applicable, objects in writing within ten (10) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Claimant may implement the proposed setoff or recoupment against the Claim held by the Estate.

13.3    Lawsuits.

On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim against the Debtor except proof of claims and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan.  All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.  All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Trust to prosecute, settle or dismiss as the Distribution Trustee sees fit.

13.4    Insurance.

      Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor or any of the Debtor's Representatives is or was the insured party; the Trust shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.5    Release and Exculpation.

      Neither the Debtor, the Distribution Trustee, or their respective Representatives shall have or incur any liability to any holder of a Claim or Equity Interest for any act, event or omission in connection with, or arising out of, the Chapter 11 case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct.  Each Representative of the Trustee, the Sole Manager or the Distribution Trustee which served in such capacity from and after the Petition Date shall hereby be released from all claims; demands or suit; known or unknown; fixed or contingent; liquidated or unliquidated; whether or not asserted; arising prior to, upon, or after the Petition Date; which may be held or asserted by the Debtor, the Trust, any Creditor, and current or former holders of an Equity Interest as of the Effective Date.

13.6    De Minimis Distributions.

      No distribution of less than $25.00 shall be required to be made to any holder of an Allowed Claim.  Such undistributed amount may be retained by the Trust.

13.7    Payment of Statutory Fees.

      The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due through confirmation of the Plan will be paid in full by the Debtor.  The Debtor shall file with the Court and serve on the United States Trustee a monthly financial report for each month this Debtor was in bankruptcy through the Confirmation Date.  After confirmation (including through the Effective Date and the Vesting Date), the Distribution Trustee shall pay United States Trustee quarterly fees on disbursements from the Trust corpus as such fees accrue until the Case is closed by the Court.  The Distribution Trustee shall file a quarterly financial report for each quarter (or portion thereof) that the Case remains open post-confirmation until the Case is closed or converted to Chapter 7.

13.8    Bankruptcy Restrictions.

      From and after the Effective Date, the Debtor and, after the Vesting Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines (except as provided in Article 13.7 above).  The Distribution Trustee may, on behalf of the Trust, compromise claims and controversies post-Vesting Date without Bankruptcy Court approval by filing a notice of all settlements with the Bankruptcy Court and delivering such notice to those parties who have filed requests with the Distribution Trustee for notice of settlements.  Each notice shall state that the Distribution Trustee intends to settle unless a particular party obtains a hearing before the Bankruptcy Court prior to the proposed

settlement.  The notice shall summarize the terms of the proposed settlement.  The Trust may operate the Debtor's business in such manner as is consistent with companies not in bankruptcy without the need of seeking Bankruptcy Court approval with regard to any aspect of the Trust's business.

13.9   Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, the holders of Equity Interests, and the Distribution Trustee, and all of their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor or any other person, (b) to prejudice in any manner the rights of the Debtor or any other person or (c) to constitute any admission by the Debtor or any other person.

13.10   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 cases, including the documents executed pursuant to the Plan.

13.11   Modification of Plan.

The Debtor may propose modifications of the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and (b) the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that (i) the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Section 1129 of the Bankruptcy Code and (iii) the circumstances warrant such modifications.  A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.  Upon motion and order of the Court, the Distribution Trustee may make technical modification to the Plan.

13.12   Creditor Defaults.

Any act or omission by a creditor in contravention of a provision within the Plan shall be deemed an event of default under the Plan.  Upon an event of default, the Debtor, or the Distribution Trustee, as the case may be, may seek to hold the defaulting party in contempt of the Confirmation Order.  If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Debtor or the Distribution Trustee in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rules of Civil Procedure, Rule 70, (b) may enforce the Plan by order of specific performance, (c) may award judgment against such defaulting creditor in favor of the Estate or the Trust in an amount,

including interest, to compensate the Estate or the Trust for the damages caused by such default; and (d) make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

13.13  Severability.

Should the Bankruptcy Court determine that any provision of the plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Debtor may modify the Plan in accordance with Article 13.11 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest.  Such determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

13.14  Closing the Case.

Upon the Plan being substantially consummated and, upon motion by the Distribution Trustee, a final decree entered containing such provisions as may be equitable. The Court may close the case, but retain jurisdiction to hear and decide: any and all pending adversary proceedings, applications and contested matters, including any remands of appeals; any and all pending objections to Claims or the allowance, including with respect to the classification, priority, estimation or payment of any Claim; any and all pending Fee Applications.

DATED:     June 13, 2006
           Houston, Texas

**THE STEPHENS COMPANY**

By:  ✗ See Attached
     Thomas P. Buckley
     President

**MUNSCH HARDT KOPF & HARR, P.C.**

By:
     Randall A. Rios
     Lynn Chuang Kramer
     700 Louisiana, Suite 4600
     Houston, Texas 77002-2732
     Telephone: (713) 222-1470
     Facsimile: (713) 222-1475

**ATTORNEYS FOR THE DEBTOR**

02:58

including interest, to compensate the Estate or the Trust for the damages caused by such default; and (d) make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

### 13.13 Severability.

Should the Bankruptcy Court determine that any provision of the plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Debtor may modify the Plan in accordance with Article 13.11 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Such determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

### 13.14 Closing the Case.

Upon the Plan being substantially consummated and, upon motion by the Distribution Trustee, a final decree entered containing such provisions as may be equitable. The Court may close the case, but retain jurisdiction to hear and decide: any and all pending adversary proceedings, applications and contested matters, including any remands of appeals; any and all pending objections to Claims or the allowance, including with respect to the classification, priority, estimation or payment of any Claim; any and all pending Fee Applications.

DATED:        June 13, 2006
              Houston, Texas

                                        THE STEPHENS COMPANY

                                        By: _____
                                            Thomas P. Buckley
                                            President

                                        **MUNSCH HARDT KOPF & HARR, P.C.**

                                        By:_____
                                            Randall A. Rios
                                            Lynn Chuang Kramer
                                            700 Louisiana, Suite 4600
                                            Houston, Texas 77002-2732
                                            Telephone: (713) 222-1470
                                            Facsimile: (713) 222-1475

                                        **ATTORNEYS FOR THE DEBTOR**

# EXHIBIT A
# DISTRIBUTION TRUST AGREEMENT

## THE STEPHENS COMPANY DISTRIBUTION TRUST AGREEMENT

THIS STEPHENS COMPANY DISTRIBUTION TRUST AGREEMENT (this "Agreement") is entered as of the _____ day of _____, 2006 (the "Effective Date") by and between The Stephens Company ("Stephens") and _____, as independent trustee hereunder (the "Trustee").

WHEREAS, on _____, 2006, the Chapter 11 Plan of Reorganization for Stephens (the "Plan"), administered under Case No. 06-30674-H5-11 was confirmed by the United States Bankruptcy Court for the Southern District of Texas, Houston Division pursuant to Title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Plan provides for, among other things, the creation of a distribution trust;

WHEREAS, the Plan provides for and requires the appointment of the Trustee to, among other things, receive and administer certain Distributable Assets (the "Trust Assets") in order to effect an orderly liquidation and distribution of the Trust Assets and perform such other duties as set forth in the Plan; and

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby covenant and agree as follows:

1.      Definitions.  For purposes of this agreement, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, and in addition, the following terms shall have the following meanings:

1.1     Contested Claims Escrow shall mean an escrow account created by the Trustee into which the Trustee shall deposit any Withheld Distribution Amount.

1.2     Permitted Investment shall mean any of the following: (i) marketable direct obligations issued or unconditionally guaranteed by the United States of America or any agency thereof maturing within ninety (90) days from the date of acquisition thereof; (ii) certificates of deposit, maturing no more than ninety (90) days from the date of creation thereof, issued by commercial banks incorporated under the laws of the United States of America, each having combined capital, surplus and undivided profits of not less than $200,000,000 and having a rating of "A" or better by a nationally recognized rating agency; provided that the aggregate amount invested in such certificates of deposit shall not at any time exceed $100,000 for any one such certificate of deposit and $200,000 for any one such bank; (iii) time deposits, maturing no more than thirty (30) days from the date of creation thereof with commercial banks or savings banks each having membership in the Federal Deposit Insurance Corporation and in amounts not exceeding the maximum amounts of insurance thereunder; and (iv) revenue and tax anticipation bonds and notes issued by states of the United States of America.

1.3     Trust Assets shall mean the Trust Assets, together with any funds, assets, proceeds, properties, interest and income derived therefrom or accredited thereto.

1.4     Trust Beneficiaries shall mean the holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Claims or Equity Interests in Classes 1 through 6 under the Plan.

**EXHIBIT A**

1.5     Vesting Date shall mean the five (5) business days following the Effective Date upon which the Distributable Assets shall vest in the Trust pursuant to Article 7 of the Plan.

1.6     Withheld Distribution Amount shall mean an amount withheld by the Trustee sufficient to be distributed on account of the full amount of any Contested Claim, provided, however, the Trustee may request that the Bankruptcy Court estimate the amount to be placed in escrow on account of any Contested Claim and such estimated amount need not be the full amount of the asserted Claim.

2.      Creation of The Stephens Company Distribution Trust.

2.1     Purpose of The Stephens Company Trust.  Stephens and the Trustee hereby constitute and create The Stephens Company Distribution Trust (the "Trust") for the sole purpose of (i) liquidating the Trust Assets in an orderly fashion, including litigating in an orderly fashion the Litigation Claims owned by Stephens on the Vesting Date, or asserted by the Trustee after the Vesting Date, and distributing the proceeds therefrom and any other Cash pursuant to the Plan and this Agreement; (ii) resolving Contested Claims; and (iii) distributing Cash from the Contested Claims Escrow, pursuant to and in accordance with the Plan.

2.2     Appointment of Trustee.  Pursuant to the Plan, _____ is hereby named as Trustee, to act, hold and administer the Trust Assets, subject to the conditions set forth herein and in the Plan.

2.3     Acceptance by Trustee.  The Trustee is willing, and does hereby accept the appointment, to serve as Trustee, and to hold and administer the Trust Assets in trust for the sole benefit of the Trust Beneficiaries pursuant to the terms of this Agreement and the Plan and to perform such other functions designated for the Trustee under the Plan.  In accepting the trust hereby created, the Trustee acts solely as trustee hereunder and not in his individual capacity.

2.4     Name of the Trust.  The Trust established hereby shall bear the name "The Stephens Company Distribution Trust."  In connection with the exercise of the powers as Trustee, the Trustee shall use this name, or such variation thereon as he sees fit.

2.5     Transfer of Distributable Assets to the Trust.  On the Vesting Date (i) Stephens shall convey to the Trust all of its respective right, title and interest in and to all of the Trust Assets, and (ii) the Trustee shall become the representative of Stephens's estate for purposes of prosecuting any and all rights, claims or causes of action, including but not limited to the Litigation Claims, whether known or unknown, asserted or unasserted, at law or in equity, and whether arising pursuant to the Bankruptcy Code or other applicable law, each of the foregoing pursuant to the terms of the Plan.  The property, rights, claims, causes of action or other assets transferred to the Trust shall be deemed vested in the Trust as of the Vesting Date, free and clear of all Claims and Equity Interests, except as specifically provided in the Plan.  The Trust Assets shall be administered by the Trustee on behalf of the Trust Beneficiaries.

3.      Creation of The Stephens Company Advisory Board

3.1     Purpose.  An Advisory Board shall be formed to advise the Trustee.

3.2     Appointment of Advisory Board Members.  The Advisory Board shall consist of two representatives of the holders of General Unsecured Claims appointed by the Creditors'

Committee, or in the alternative, appointed by the Debtor in the instance a Creditors' Committee is not formed, and one Thomas P. Buckley, former president of the Debtor.  In event the appointing representatives fail to appoint an Advisory Board member and there is consequently no person serving on the Advisory Board, the Bankruptcy Court shall appoint the Advisory Board members.

      3.3    Resignation or Removal of Advisory Board Members.  Upon resignation or removal of either of the representatives of the Advisory Board appointed by the Creditors' Committee, the Bankruptcy Court shall upon motion final by the Trustee appoint a successor representative.

4.    Rights, Powers and Duties of Trustee.

      4.1    Declaration Acknowledging Beneficial Interest.  The Trustee hereby acknowledges that, on and after the conveyance of the Trust Assets in and to the Trust, the Trust Beneficiaries and their successors and assigns, as their interests may appear, shall have the beneficial interest in all Trust Assets as described in the Plan.

      4.2    Trustee's Rights and Powers.  The Trustee shall have only such powers and authority as is necessary to effect the disposition, orderly liquidation and distribution of all Trust Assets as provided under the Plan, subject to the limitations set forth in this Agreement. The Trustee may abandon any asset which, in his discretion, he deems to be of inconsequential value or burdensome to the Trust.  The Trustee shall have the right to litigate causes of action relating to Trust Assets and other causes of action as set forth in the Plan.  Except as otherwise provided herein, the obligations, duties, or rights of the Trustee under this Agreement shall not be assignable, voluntarily or involuntarily, and any attempted assignment shall be void.  Under no circumstance shall the Trustee, in its capacity as such, or the Trust have any powers to engage in any trade or business or any other activity except as explicitly permitted herein or under the Plan.

      4.3    Limitations on Investment.  The Trustee may invest and reinvest all Cash held by the Trust (subject to the distribution requirements set forth in this agreement), including Cash held in any escrow maintained for the Trust, only in a Permitted Investment.

      4.4    Distributions.  The Trustee shall distribute at least annually to the Trust Beneficiaries its net income plus all net proceeds from the sale of Trust Assets, except for reasonable reserve amounts as determined by the Trustee in his sole discretion.  The Trust net income and Trust Assets, as specifically provided for herein or pursuant to the Plan, shall be distributed as follows:

          (a)    Allowed Secured Claims of Classes 2 (such Claims to be paid only from the proceeds of such other Collateral securing the Allowed Secured Claims);

          (b)    Allowed Administrative Expense Claims of the Case;

          (c)    Post-confirmation expenses of the Trust, including a reserve of such Cash to pay future expenses of the Trust as the Trustee deems advisable;

(d)     Allowed Claims of Class 1 under the Plan, in order of priority, with Bankruptcy Code section 507(a)(4) Allowed Claims being satisfied in full first, Bankruptcy Code section 507(a)(5) Allowed Claims being satisfied in full next, and then Bankruptcy Code section 507(a)(6) Allowed Claims, and so on;

(e)     Allowed Claims entitled to priority pursuant to Bankruptcy Code section 507(a)(8);

(f)     Allowed Claims of Class 3 and 4;

(g)     Allowed Claims of Class 5; and

(h)     Allowed Equity Interests of Class 6.

Notwithstanding any provision to the contrary herein, with respect to each of the categories (d) through (f) above, to the extent such claim has been assumed by a third party the holder of such Claim shall look solely to that third party for payment and shall receive nothing from the Trust.

4.5     <u>Delivery of Distributions</u>.   Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or, if the Trustee has been notified in writing of a change of address, at such address.   If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Trustee is notified in writing of such holder's then current address.   Notwithstanding any provision to the contrary herein, the Trustee shall not be required to make distributions of less than $25.00 to any holder of an Allowed Claim and any such undistributed amounts may be retained by the Trust.

4.6     <u>Unclaimed Distributions and Uncashed Checks</u>.   Checks issued by the Trustee in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.   Requests for reissuance of any check shall be made directly to the Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.   Any claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.   After such date, all Claims in respect of void checks shall be discharged and forever barred.

4.7     <u>Contested Claims Escrow</u>.   Each Withheld Distribution Amount escrowed by the Trustee pursuant to the terms of the Plan shall be escrowed as provided for in the Plan.   The escrow of such amounts may be established solely by an accounting entry on the books of the Trust.   The Trustee shall not be required to establish or maintain separate bank accounts or escrow accounts for each such amount withheld.

4.8     <u>Claim Objections</u>.   As soon as practicable, but in no event later than one year after the Vesting Date (unless extended by order of the Bankruptcy Court), the Trustee may file objections to Claims with the Bankruptcy Court and serve copies of the objections upon the holders of each of the Claims to which objections are made.   This Section shall not limit the Trustee's right to object to Claims filed prior to, but amended after, the Effective Date.

4.9     Prosecution of Objections.  Except as the Bankruptcy Court may order otherwise, the Trustee shall litigate to judgment, settle, or withdraw objections to Contested Claims.

4.10     Liability of Trustee.

(a)     Standard of Care.   Except in the case of willful misconduct, gross negligence, knowing violations of the law or the terms of this Agreement, or transactions from which the Trustee directly or indirectly derived improper personal benefit, the Trustee shall not be personally liable for any loss or damage by reason pursuant to the discretion, powers, and authority conferred on such person or persons by this Agreement.

(b)     No liability for Acts of Predecessor.  No successor Trustee shall be in any way responsible for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility in writing.

(c)     No Liability for Acts of Others.  No Trustee shall be in any way personally liable for the acts or omissions of any agent or employee of the Trustee unless the Trustee acted with gross negligence or willful misconduct in the selection or retention of such agent or employee.

4.11     Selection and Compensation of Professionals.   Subject to Bankruptcy Court approval, which need be obtained only if objection is timely made thereto, the Trustee may employ professionals to represent the Trust.   Notice of retention of, and all requests for compensation for, professionals retained by the Trust pursuant to this Section shall be served on those parties who have filed requests with the Trustee for notice of settlements by the Trust.

4.12     Maintenance of Register.  The Trustee shall at all times maintain a register of the names, addresses and ownership percentages of the Trust Beneficiaries as in effect on the Vesting Date and as revised from time to time thereafter.   The Trustee shall record all distributions made to the Trust Beneficiaries in such register.

4.13     Notice of Settlements.  The Trustee shall file notice of all settlements with the Bankruptcy Court and deliver such notice to those parties who have filed requests with the Trustee for notice of settlements.  Each notice shall state that the Trustee intends to settle unless a particular party obtains a hearing before the Bankruptcy Court prior to the proposed settlement.  The notice shall summarize the terms of the proposed settlement.

4.14     Quarterly Report.  As soon as practicable after the end of each calendar quarter of the Trust, and in no event later than forty-five (45) days after the end of each calendar quarter, the Trustee shall submit to all parties who have filed written requests with the Trustee pursuant to Section 12.6 of this Agreement, (i) an operating statement showing all revenues received by the Trust during the immediately preceding calendar quarter and all expenses of operation of the Trust (including the Trustee's commissions and all other expenses associated with the sale of any Trust Assets) paid by the Trust during such calendar quarter; and (ii) a written report and accounting showing (a) the assets and liabilities of the Trust at the end of such calendar quarter and (b) the amount of any Contested Claims Escrow then being maintained by the Trustee.  The Trustee shall furnish to the Trust Beneficiaries such information with respect to any federal or state tax as shall be required by law and as set out in Section 5.3 of this Agreement and shall endeavor to maintain the status of the Trust as a trust and not as an association taxable as a corporation.

4.15    Compensation and Reimbursement of Expenses of Trustee.

(a)    The Trustee's compensation will be based on the aggregate distributions (on a cumulative basis) made from the Trust, and calculated as follows:

(i)    Twenty-five percent (25%) on the first $5,000 or less;

(ii)   Ten percent (10%) on any amount in excess of $5,000 but not in excess of $50,000; and

(iii)  Five percent (5%) on any amount in excess of $50,000.

(b)    Secretarial/administrative assistant time for the Trustee's staff will be billed to the Trust at a rate of $75.00 per hour; all other expenses will be billed at the actual amount expended, as governed by the existing guidelines for expense reimbursement in Chapter 7 cases before the Bankruptcy Court.

4.16    Removal of Trustee.  A Trustee appointed pursuant to this Agreement may be removed upon notice and hearing in the Bankruptcy Court.  If a Trustee is removed for "good cause" (as herein defined), such Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under this Agreement or otherwise.  For purposes of this Section, the term "good cause" shall mean (i) the Trustee's gross negligence or willful failure to perform his duties under this Agreement or the Plan, or (ii) the Trustee's misappropriation or embezzlement of any Trust Assets, or the proceeds thereof.  If a Trustee is removed (i) by virtue of his inability to perform his duties under this Agreement due to death, illness or other physical or mental disability; (ii) following the liquidation of all or substantially all of the Trust Assets; or (iii) for any other reason whatsoever other than for "good cause," subject to a final accounting, the Trustee shall be entitled to all accrued and unpaid fees, reimbursement and other compensation, to the extent incurred or arising or relating to events occurring before such removal.

4.17    Successor Trustee.   In the event that the Trustee is removed, resigns or otherwise ceases to serve as Trustee, a successor Trustee shall be named by the Bankruptcy Court to be effective upon such successor Trustee's execution of a Trust Agreement providing the same terms as this Agreement.   The Trustee may resign upon written notice to the Bankruptcy Court, which resignation shall become effective upon the selection of a successor Trustee, and the execution by the successor Trustee of a Trust Agreement providing the same terms as this Agreement.  If a Trustee resigns from his position as Trustee hereunder, subject to a final accounting, such Trustee shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation.  Any successor Trustee shall execute and deliver to the preceding Trustee a Trust Agreement providing for the same terms as this Agreement and accepting such appointment, and thereupon such successor Trustee, without further act, shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Trustee.   Wherever reference is made in this Agreement to the Trustee, the same shall be deemed to refer to the Trustee acting hereunder or thereunder from time to time.

4.18    Indemnification of Trustee.   The Trustee shall be indemnified by and receive reimbursement from the Trust Assets against and from any and all loss, liability, claim, expense or damage (including, without limitation, legal fees and expenses) which any of them may incur

or sustain, in good faith and without gross negligence or willful misconduct in the exercise and performance of any of his or her powers and duties under this Agreement or in connection with any matter arising out of or related to the Plan or the affairs of the Trust.  If any Trustee becomes involved in any action, proceeding or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Trust, the Trust shall periodically advance or otherwise reimburse on demand the Trustee's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorneys' fees, disbursements and related expenses) incurred in connection therewith; provided, however, that the Trustee shall be required to promptly repay to the Trust the amount of any such advanced or reimbursement paid to him to the extent that it shall be ultimately determined by Final Order that such person engaged in fraud, willful misconduct or gross negligence in connection with the affairs of the Trust with respect to which such expenses were paid.

5.      Tax and Income Allocation Provisions of the Trust.

        5.1     Treatment of the Trust.  Unless the Trustee determines, in his reasonable discretion, that such treatment is not appropriate, the Trust Beneficiaries shall be treated as the grantors and deemed owners of the Trust.  The transfer of the Trust Assets or other assets to the Trust shall be treated for all purposes of Title 26 of the United States Code (the "Internal Revenue Code") as a deemed transfer of assets to holders of Allowed Claims receiving interests in the Trust followed by a deemed transfer by such holders to the Trust.  The Trustee shall file federal income tax returns for the Trust as a grantor trust pursuant to Section 1.671-4(a) of the Federal Income Tax Regulations.  All federal, state and local income tax returns required on behalf of the Trust shall be prepared and filed by the Trustee in a manner that is consistent with grantor trust treatment.  The Trust shall reimburse the Trustee for any costs and expenses incurred in the preparation and filing of such returns or incurred in complying with Article 5 of the Agreement.

        5.2     Treatment of Contested Claims Escrow.  Unless the Trustee determines, in his reasonable discretion, that such treatment is not appropriate, pursuant to Section 468B(g) of the Internal Revenue Code, each escrow established pursuant to the Plan shall be treated as a trust, separate and distinct from the Trust and any other escrow which is subject to taxation under Section 641 of the Internal Revenue Code for each calendar year during which such escrow is maintained.  Any federal, state or local income tax required to be paid with respect to the taxable income of any escrow, shall be paid exclusively out of the Cash credited to such escrow.

        5.3     Allocation of Income or Loss.  Unless the Trustee determines in his reasonable discretion that such assumptions are not appropriate, the Trustee shall assume that (i) the adjusted basis of each asset held by the Trust equals the initial basis (fair market value) of such asset on the Vesting Date, subject to any adjustments to such initial basis required to be made under the Internal Revenue Code to reflect allowable depreciation, amortization or depletion deductions; and (ii) the calendar year is the taxable year of each record holder of vested beneficial interests in the Trust.  On the basis of such assumptions, (i) the Trustee shall compute the gross income and net income or loss of the Trust for each taxable year; (ii) the Trustee shall assume that such gross income and net income or loss is recognized for tax purposes by the Trust Beneficiaries based on their period of ownership of vested beneficial interests in the Trust during the calendar year; and (iii) the Trustee shall provide each record holder of an Allowed Claim receiving an allocation of income or loss, and shall file with the

appropriate taxing authorities, a K-1 or other income tax return or report containing sufficient data to enable the holder to complete his income tax return(s).

   (a) <u>Allocation on Change in Beneficial Interests</u>.  If, during a calendar year, the ownership of beneficial interests in the Trust changes, the assets and income or loss for the entire calendar year shall be prorated and allocated among the holders of Allowed Claims therein.

   (b) <u>Delivery of Statements to Holders of Record</u>.  To the extent required by law, written statements or notices reflecting an Allowed Claim holder's share of the income or loss, if any, of the Trust shall be delivered by the Trustee to the holders of the Allowed Claims. The Trustee shall have no obligation to deliver any such statements to a transferee of an Allowed Claim or beneficial interest therein unless, thirty (30) days prior to the date on which the statement is required to be delivered, a written request executed by the holder of record and the transferee is received by the Trustee.

  5.4 <u>Taxable year of the Trust</u>.  The Trust and the escrows shall determine income or loss using a fiscal year that is the calendar year.  Any tax returns required to be filed by or on behalf of the above shall also be filed on a calendar year basis.

6. <u>Rights, Powers and Duties of Trust Beneficiaries</u>.

  6.1 <u>Interests of Trust Beneficiaries</u>.  The Trust Beneficiaries shall have a beneficial interest in the Trust Assets as specified herein and in the Plan.  The ownership of a beneficial interest hereunder shall not entitle any Trust Beneficiary to any title in or to the Trust Assets as such or to any right to call for a partition or division of the same or to require an accounting except as specifically required by the terms hereof.

  6.2 <u>Effect of Death, Incapacity, Insolvency or Bankruptcy of Trust Beneficiary</u>.  The death, incapacity, insolvency or bankruptcy of a Trust Beneficiary during the term of this Trust Agreement shall not operate to terminate the Trust, nor shall it entitle the representatives or creditors of the deceased, incapacitated, insolvent, or bankrupt Trust Beneficiary to an accounting, or to take any action in the courts or elsewhere for the distribution of the Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any other Trust Beneficiary.

7. <u>Amendment of Agreement</u>.  This Agreement may be amended, modified, or altered only upon the approval of the Bankruptcy Court and by written agreement with the Trustee.

8. <u>Conflicting Claims</u>.  In the event the Trustee becomes aware of any disagreement or conflicting claims with respect to the Trust Assets, or if the Trustee in good faith is in doubt as to any action which should be taken under this Agreement, the Trustee shall have the option to do any or all of the following:

   (a) File a suit in interpleader or in the nature to interpleader in the Bankruptcy Court and obtain an order requiring all persons and parties involved to litigate their respective claims arising out of or in connection with this Agreement or the Plan; or

   (b) File any other appropriate motion for relief in the Bankruptcy Court.

9.    Effect of the Trust on Third Parties.  There is no obligation on the part of any person dealing with the Trustee or any agent of the Trustee, to see to the application of any consideration passing to the Trustee or any agent of the Trustee, or to inquire into the validity, expediency or propriety of any such transaction by the Trustee or any agent of the Trustee.

10.    Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

11.    Termination of the Trust.  The Trustee shall make a final distribution of the Trust Assets, and the Trust shall terminate not later than 120 days after the last to occur of (i) the liquidation of all Trust Assets, including without limitation the resolution by judgment or settlement of all claims or causes of action held or asserted by the Trust, and the collection by the Trustee of all such judgments or settlements, or the determination by the Trustee, after notice to all creditors (and approval by the Bankruptcy Court in the event any objection thereto is filed), that any such assets, claims, judgments, or settlements are to be abandoned or written off as uncollectible or of negligible value and (ii) the final resolution of all claims objections, so that all Claims asserted against the Debtor have become either finally Allowed or finally Disallowed.  Notwithstanding, the Trust shall terminate on the fifth anniversary of the Effective Date unless the Trustee (with Bankruptcy Court approval obtained within six months of the beginning of such extended period) determines that the extension of the Trust term for a specified finite term is necessary.  Upon termination of the Trust, the Trustee shall have no further obligations to the Trust Beneficiaries or holders of Allowed Claims.

12.    Construction of This Instrument.

    12.1    Applicable Law.  The Trust and this Agreement shall be construed, regulated and administered under the laws of the State of Texas and the United States of America.

    12.2    Relationship Created.  The only relationship created by this Agreement is the relationship between the Trustee and the Trust Beneficiaries.  No other relationship or liability is created.  Nothing contained herein shall be construed so as to constitute the Trust Beneficiaries or their successors in interest as creating an association, partnership or joint venture of any kind.

    12.3    Interpretation.  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting the same.  Unless the context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular.

    12.4    Partial Invalidity.  If any provision of this Agreement shall for any reason be held invalid or unenforceable by any court, governmental agency or arbitrator of competent jurisdiction, such invalidly or unenforceability shall not affect any other provision hereof, but this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

    12.5    The Plan.  If any inconsistencies exist between the Plan and this Agreement, the terms of the Plan shall control.

12.6    Notices.  All notices, requests, consents and other communications hereunder shall be in writing and delivered in person or by first class mail, postage and fees prepaid, and shall be addressed (i) if to the Trustee:

> _____, Trustee
> [Address]
> [Address]
>
> with a copy to:
>
> [Trustee's Attorney]
> [Firm Name]
> [Address]
> [Address]

or (ii) if to any Trust Beneficiary, as indicated on the register maintained by the Trustee.

12.7    Successors and Assigns.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, administrators, executors, successors and assigns.

12.8    Tax Identification Numbers.  The Trustee may require any Trust Beneficiary to furnish to the Trustee its employer or taxpayer identification number as assigned by the Internal Revenue Service and the Trustee may condition any distribution to the Trust Beneficiary upon receipt of such identification number.

12.9    Compliance With All Applicable Laws.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation or order of such governmental authority relating to its businesses, the Trustee shall comply with such law, rule, regulation or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, for which an adequate reserve has been set aside on the books of the Trust.

12.10    Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over this Agreement and the Trust.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the day and year first above written to evidence their consent and agreement with the terms and provisions of this Agreement.

THE STEPHENS COMPANY

By: _____

Thomas P. Buckley
President of The Stephens Company
Debtor-in-Possession

-and-

Trustee

By: _____

[Name of Trustee]